STATE of Missouri, Respondent,

v.

Hollis BUTLER, Appellant.

No. 46433.

Supreme Court of Missouri,
Division No. 2.

March 10, 1958.

Bradley & Noble, Kennett, for appellant.

John M. Dalton, Atty. Gen., Russell S. Noblet, Asst. Atty. Gen., Jefferson City, for respondent.

ELMO B. HUNTER, Special Judge.

Defendant, Hollis Butler, on May 1, 1957, was convicted by a jury in Dunklin County in the circuit court of breaking out of the county jail and escaping, a graded felony under Section 557.380 RSMo 1949, V.A.M.S., and his punishment was assessed at six months in the county jail. He appealed to this court.

The information in substance charged that defendant on March 12, 1956, in Dunklin County, Missouri, while lawfully confined in the county jail upon conviction for the crime of petit larceny, singly and in joint concert, did wilfully, unlawfully and feloniously break such prison, and escape therefrom by cutting, sawing, and forcing a hole through the iron bars and doors of said jail against the peace and dignity of the state.

At the trial the Clerk of the Magistrate Court of Dunklin County appeared and produced the record of that court which showed that on November 23, 1955, the defendant entered his plea of guilty to the charge of petit larceny; and was assessed a fine of $5 and three months' confinement in the county jail, and was granted parole on the jail sentence, conditioned on good behavior. This record also showed that on January 9, 1956, his parole was revoked and that he was again committed to the jail. The Sheriff of Dunklin County testified that defendant was placed in jail on January 7, 1956, where he remained until March 12, 1956. On that date there was a jail break and defendant was one of eight men who escaped. As expressed by the witness: "There were several bars cut from the door on the north side of the jail, and the prisoners escaped through this hole that was made by cutting the bars."

"Q. How big an opening was made in the door, approximately? A. Well, let's see, it was about—oh, I would say 12x14 inches, probably.

"Q. Do you know what time this escape was made, about? A. It was sometime after midnight the night of March 11th, early morning of March 12th."

Four days later defendant was located in hiding in a nearby county, arrested for escaping jail and taken back into custody.

Defendant testified in his own behalf. He was asked by his counsel:

"Q. Now, Hollis, were you in jail in Dunklin County on the night of March 12, 1956? A. Yes, sir.

"Q. Did you have anything to do with breaking the jail, doing any of the breaking at all? A. No, sir.

"Q. And did you go out when the others did? A. No, sir.

"Q. Except one other, who was that? A. Robert Hickman.

"Q. Robert Hickman. And did you and Robert go out when the other prisoners went out? A. No, sir.

"Q. How long did you stay in there after they went out? A. Oh, it was 20 minutes.

"Q. And how come you to go out, what happened to you to cause you to go out, you decided at the beginning not to, hadn't you? A. Yes, sir.

"Q. How come you to go out? A. Well, he kept saying if I would go he would go.

"Q. That was Hickman? A. Yes, sir.

"Q. And what did you finally decide to do? A. Well, I finally decided to go with him.

*    *    *    *    *    *

"Q. Hollis, did you know it was against the law to walk out of the jail like you did? A. No, I didn't.

\* \* \* \* \* \*

"Q. Were you intending to come back to the jail? A. Yes, sir."

On cross-examination defendant testified that the reason he was in jail at the time of the escape was that he had a 90-day suspended sentence and that he "broke the sentence" and they put him back in. He was also asked if he had ever been convicted of a criminal offense, to which he replied, "I have been convicted of petit larceny."

"Q. How many times? A. Twice, I think."

On redirect examination by his attorney he testified that one of the mentioned convictions for petit larceny is on appeal. Several witnesses for defendant testified as to his reputation. Their testimony varied as to how long they had known defendant, how well they had known him, and what they knew of his reputation.

On this appeal defendant's counsel briefed eight points, several of which are so related that we discuss them together. The first concerns the charge that the trial court erred in giving over defendant's objection Instruction No. 4, a credibility of witness instruction which reads as follows:

"The court instructs the jury that you are the sole judges of the testimony and the weight thereof and the credibility of the witnesses. In determining what weight you will give to the testimony of any witness, you may take into consideration the conduct and demeanor of such witness while on the witness stand, his or her manner of testifying, his or her apparent means of knowledge or lack of knowledge, the bias or prejudice, if any, exhibited, his or her interest, if any, in the result of the trial and the

reasonableness or unreasonableness of such witness testimony.

"If, upon a consideration of all the evidence, you conclude that any witness has wilfully sworn falsely as to any material matter involved in the trial, you may reject or treat as untrue the whole or any part of such witness' testimony.

" 'Wilfully' means intentionally, not accidentally."

■ Defendant refers directly to the first paragraph of the instruction and claims that the trial court erred in giving the instruction because nothing occurred in the conduct of any witness to justify such instruction. It was cautionary in nature and given in the exercise of the discretion of the trial judge. The first paragraph states only accepted fundamentals inherent in the evaluation of testimony. It merely directs the jury's attention to what their common sense would otherwise tell them. We find nothing improper, misleading or prejudicial in the giving of this portion of the instruction.

■ Paragraph two, the so-called, "falsus in uno, falsus in omnibus" portion, is based on the established rule that if the jury members believe a witness has committed perjury in the case on trial by wilfully swearing falsely to a material fact, they may for that reason alone reject the remainder of his testimony if they do not otherwise believe it to be truthful. Such fact furnishes them a valid reason for disbelieving everything else the witness may have said. They are not required to refuse to believe it but may do so. State v. Willard, 346 Mo. 773, 142 S.W.2d 1046, 1052; State v. Abbott, Mo.Sup., 245 S.W.2d 876, 881. Instructions of the type represented by paragraph two are generally of little, if any, assistance to juries, and are subject to the criticism that they may be misunderstood, or misapplied. In the past our appellate courts have looked upon them with disfavor, although *as yet* this alone has not

resulted in a reversal of the particular case. See discussion, 4 A.L.R.2d 1078; 90 A.L.R. 74. This type of instruction (paragraph two) should not be given unless there is some basis for it, and even where there is such basis, the giving or refusal of the instruction is a matter of discretion of the trial court. It has been held that there is no basis for the instruction "'unless it is quite evident that material contradictory testimony has been given' * * * or there is something in the case indicating a wilful effort to misrepresent or suppress a material fact" or other valid reason to believe that perjury has been committed. Farmers' State Bank v. Miller, Mo.App., 26 S.W.2d 863, 865, and cases cited. See also, State v. Douglas, 312 Mo. 373, 278 S.W. 1016, 1027. In the case before us there is evidence which the trial judge properly may have believed indicated that there was an effort by defendant intentionally to misrepresent or suppress a material fact. Defendant testified, and his counsel argued to the jury, that although the defendant was present during the entire time he did not participate in the sawing of the jail bars or in leaving as soon as they were sawed but rather remained aloof from the entire matter until 20 minutes later when a cell mate in effect dared him to leave the jail. He then "walked out" of the jail. Although he remained away in hiding some four days he intended to return but was apprehended first. He did not know it was unlawful to escape as he did. The otherwise uncontroverted evidence was that the escape hole that must have been used by all the escaping prisoners was only about 12 by 14 inches in size. It is contrary to this evidence and to the physical facts established by it for defendant to have escaped other than by crawling through this hole rather than by just walking out without any physical impediment as he would have the jury and court believe. Further, it is somewhat incredible that defendant did not know or sense that his exit under the circumstances was or might be against the law. His expressed intent to return voluntarily is likewise subject to some doubt. With this conflicting and somewhat implausible, if not incredible, testimony before the trial court, it gave the objected to instruction. Without intending any encouragement to the future use of this type of cautionary instruction (paragraph two) we do not find that its having been given under the particular facts of this case resulted in prejudicial error. We overrule defendant's contention.

Defendant objected at the trial and in his motion for a new trial to Instruction No. 7 for the reason "it omitted from the charge the information that the defendant broke jail by sawing and forcing a hole through the iron bars of the door of the jail." In his brief he has changed his contention by asserting that it was error to give Instruction No. 7 because there was no evidence that defendant did "either alone or with others break said county jail," and because "there was no evidence to support the submission that defendant *broke* jail." The state correctly contends that his grounds in his brief for assigning error are not the same as his grounds assigned in his motion for a new trial. 42 V.A.M.S. Supreme Court Rule 28.02 provides that if the appellant files a brief in the appellate court, assignments of error in the motion for a new trial not presented in his brief shall be deemed waived or abandoned. See also State v. Lord, Mo.Sup., 286 S.W.2d 737, 742; State v. Ash, Mo.Sup., 286 S.W. 2d 808, 813. Appellant thus is held to have abandoned his particular objection to Instruction No. 7 contained in his motion for a new trial by having failed to include it in his brief. Nor can he receive consideration of his new objection to that instruction that there was no evidence upon which to base certain portions of the instruction raised by him for the first time in his brief and not contained in his motion for a new trial. See Section 547.030 V.A.M.S. and Supreme Court Rule 27.20, 42 V.A.M.S. As stated in State v. Foster, 355 Mo. 577, 197 S.W.2d 313, 319, "* * * the instruction was not assailed on that ground in the

motion for new trial * * *. That being true, the error is not available to appellant now in view of the new trial statute."

■ Defendant objects to the admission in evidence of the record of the plea of guilty of the defendant, the judgment and sentence therein and the record of the revocation of his parole (all to show his confinement in jail upon conviction for a criminal offense at the time of the escape) because these records did not also include the information, if any, filed in that case. He argues that in order to prove a record of a plea of guilty to a misdemeanor, the state ought to be required to show that an information or indictment was filed. No authority supporting this contention is cited. Nor do we know of any. It has long been the accepted practice to permit the record of the sentence and judgment to be introduced in evidence to prove the former conviction of the defendant without requiring that it be accompanied by the information or indictment. State v. Dalton, Mo.Sup., 23 S.W.2d 1, 5; State v. King, 365 Mo. 48, 275 S.W.2d 310, 315. In the latter case we said, 275 S.W.2d loc. cit. 314, 315: "A judgment is the final judicial determination of the matter presented in the record. * * * 'The only way known to the law whereby the former conviction of the defendant of the crime of petit larceny could have been established was by the judgment * * *.'" Further, in answer to questions asked by his counsel, defendant testified that he was confined in the jail on the date in question and upon cross-examination admitted he was there because of a 90-day suspended sentence which he "broke" and they put him back in. He also admitted he had been convicted of petit larceny two times, one of which obviously resulted in his mentioned 90-day sentence. We deem defendant's objection to be without merit.

■ Did the trial court err, as defendant contends, in overruling the objection to the testimony of the sheriff that several bars were cut in the door of the jail? The precise objection was, "We object to how the break was made, unless he (the witness) knows that the defendant did the breaking. * * *" Defendant now says in his brief that since there is no evidence that he personally did any of that cutting such evidence is improper and invited the jury to assume he may have done it. The answer to this contention is clear. In order to sustain a conviction for breaking the county jail and escaping it is not necessary to prove that the defendant personally cut the bars of the jail door. Defendant was charged singly and in joint concert with breaking the county jail and escaping. It is well settled that a party may be charged with the commission of the felony and be held under such charge for being present and participating in concert with the others in the commission of the crime, or for being present and aiding and assisting another in doing it. It is not necessary that he, personally, have done all of the things which together make up the elements of the crime. State v. Sheard, Mo.Sup., 276 S.W.2d 196, certiorari denied 77 S.Ct. 68, 352 U.S. 849, 1 L.Ed.2d 60; State v. Whitaker, Mo.Sup., 275 S.W.2d 316; State v. Chernick, Mo. Sup., 278 S.W.2d 741. Under the accessory statute it is necessary only that he in some manner have aided or abetted those committing the criminal act. § 556.170 V. A.M.S. The practical effect of the statute is to virtually abrogate the distinction between principals and accessories. State v. Tripp, Mo.Sup., 303 S.W.2d 627. The objected to evidence was competent and relevant on the issue of whether or not there had been a *breaking* of the jail on the occasion in question. There was other evidence in the case showing that defendant was present when the cutting of the jail door bars was done and that defendant used the escape hole to make his escape with at least one other of the prisoners. Since the objected to evidence was competent and relevant to an issue of the case it was not error for the trial court to admit it. We note in passing that the defendant in his motion for a new trial and in his brief has not raised the question of the sufficiency of the evidence to sustain the conviction, and that

question is not before us. State v. Stidham, Mo.Sup., 258 S.W.2d 620.

■ Defendant complains that the trial court erred in overruling his objection to the prosecuting attorney's interrogating him as to how long he had been in jail. The difficulty with defendant's contention is that the record fails to show that the prosecuting attorney ever asked defendant how long he had been in jail. On direct examination by his own counsel, defendant was asked, "Now Hollis, were you in jail in' Dunklin County on the night of March 12, 1956? A. Yes, sir." On cross-examination defendant was asked, "How come you were in jail? A. Well, I had a 90-day suspended sentence, and I broke the sentence and they put me back in. Q. Was there any other reason?" To this question defendant's counsel objected. Some discussion off the record and out of the hearing of the jury occurred which resulted in the trial court ruling that the state could not show any charge for which defendant may have been awaiting trial but that it could be shown he was being held under sentence. The particular question objected to was never answered. Defendant is not entitled to have his contention upheld or determined for it does not appear in the transcript on appeal. State v. O'Brien, Mo.Sup., 249 S.W.2d 433, 435; State v. Quilling, 363 Mo. 1016, 256 S.W.2d 751, 754; State v. Marlin, Mo.Sup., 177 S.W.2d 485. We have set out what the transcript does disclose, and it involves no error. We overrule this contention of defendant.

■ Defendant also asserts that the trial court erred in refusing to permit him to offer the information in evidence as it would disclose that he was charged with escaping jail by cutting, sawing and forcing a hole through the iron bars and door of the jail. Instruction No. 7, among other things, required the jury to find that defendant "did then and there wilfully, unlawfully and feloniously either alone or with others, break said county jail and escape therefrom". This instruction correctly contains the elements of the offense;

namely, (1) The breaking, and (2) The escaping (§ 557.380 V.A.M.S.). There was no variance between the information, the instruction and the proof. As we have previously said, the state is not required to prove that defendant personally cut and sawed the bars in the jail door and it would be improper to admit the information in evidence so as to permit defendant to place the burden of making that proof on the state. The trial judge did not err in refusing to admit the information in evidence. We note in passing that the information or indictment in a criminal case is merely the formal accusation filed on behalf of the state, and as such serves no proper evidentiary purpose. Cf. State v. Gilmore, 336 Mo. 784, 81 S.W.2d 431, 432; State v. Lamb, Mo.Sup., 239 S.W.2d 496, 497; State v. Bohannon, 361 Mo. 380, 234 S.W.2d 793, 797.

■ Defendant's final contention is that the court erred in not sustaining his objection to the prosecuting attorney saying to the jury in the closing argument, "So you see it is not a good thing for society to have these criminals escaping jail and turned loose." The statute under which defendant was charged and tried provides: "If any person confined in any county jail upon conviction for any criminal offense * * * shall break such prison * * *." Under that portion of the statute on which the state based its information and presented its case it was necessary for the state to prove that the defendant had been convicted of a crime (hence, a criminal) and was confined therefor at the time of the break and escape. Defendant testified that previously he had twice been convicted of petit larceny. The evidence disclosed that he was confined in the county jail at the time of his escape as a result of one of those convictions. The objected to remark appears to be in explanation of the purpose, reason or requirements of the statute and appears to be directed to all of those who were confined in the county jail upon conviction for a criminal offense and who escaped. It was not an appeal to the jury

to convict the defendant because he had committed some other crime not in any way connected with the one for which he was being tried. See State v. Jones, Mo.Sup., 221 S.W.2d 137, 138; State v. Baber, Mo. Sup., 297 S.W.2d 439; State v. Armstead, Mo.Sup., 283 S.W.2d 577. It contains none of the personal and improper individual castigation of a defendant discussed in such decisions as State v. Groves, Mo.Sup., 295 S.W.2d 169, and State v. Tiedt, 357 Mo. 115, 206 S.W.2d 524. Under such circumstances the trial court did not err in refusing to sustain the mentioned objection.

The appellant has not demonstrated that he is entitled to a new trial for any of the reasons assigned. The transcript shows compliance with all matters necessary to be considered by the court upon the record before it, V.A.M.S. § 547.270. Accordingly, the judgment of the trial court should be and is affirmed. It is so ordered.

STORCKMAN, P. J., and EAGER, J., concur.

LEEDY, J., not sitting.