KANSAS CITY, Respondent,

v.

Rodney Gordon LANE, Appellant.

No. 24138.

Kansas City Court of Appeals.

Missouri.

June 7, 1965.

Compton & Brown, Roy W. Brown, Kansas City, for appellant.

Herbert C. Hoffman, City Counselor, and George L. DeBitetto, Asst. City Counselor, Kansas City, for respondent.

CROSS, Presiding Judge.

Defendant was tried and convicted in the municipal court of Kansas City, Missouri, on the charge of stealing personal property, to wit, merchandise belonging to Milgram's store, in violation of Section 39.750 of plaintiff city's revised ordinances of 1956. Upon appeal to the circuit court, trial to the court without a jury resulted in a judgment of conviction assessing a fine against defendant in the sum of fifteen dollars. Defendant now appeals to this court.

Plaintiff city's brief incorporates a motion to dismiss the appeal for the reason that defendant's brief does not comply with Civil Rule 83.05, V.A.M.R., in that the "Points and Authorities" and "Argument" therein set out amount to no more than mere abstract statements of law and contain no citations of authority. Although movant has some cause for complaint, rather than impose the drastic penalty of dismissal we elect to determine the appeal on its merits. To that end we proceed to state the essential facts shown by the evidence.

On the occasion of the alleged offense, defendant and a "friend" named Ward appeared at a certain Milgram store, picked up a grocery cart and proceeded to move about the store for approximately one-half hour to forty-five minutes. Ward was carrying an overcoat that had been slit "where he could drop this merchandise in, and he had it sewed at the bottom * * *. It was slit at the sleeve, enabling this merchandise to be taken out". Store employees observed Ward select some items of merchandise and place them in the cart and also pick up several articles and put them in the overcoat he was carrying. The police were notified and had arrived at the store when Ward and defendant reached the check-out stand. Both men were apprehended and searched by the police. Merchandise belonging to the store was found inside the overcoat carried by Ward. None was found on defendant's person.

Three store employees testified on plaintiff's behalf. Assistant manager Joe Vigliaturo was present in the store when "these two gentlemen came in". He testified that he saw Ward pick up a tube of tooth paste and a bar of soap and start to put them in his pocket, but "some reason or other he didn't do it". His suspicions aroused, Vigliaturo directed two store employees, Donald Peterson and Lawrence Lombardo, to watch defendant and Ward from an observation post with "two-way windows you can see out but you cannot see back up".

Donald Peterson testified that he saw defendant and Ward go up and down each aisle. He stated, "When they had picked up several items and had them in the buggy, they went over to which is the south aisle in the store and Mr. Lane held his back to his friend while his friend opened his coat and put articles in. Several times he had tried this before, holding his back to his friend, and a customer would walk in the aisle and they would stop what they were doing".

Lawrence Lombardo testified as follows: "I was up on the catwalk looking down on

them, and he (defendant) was standing in front of his friend, watching the back of the store. His friend had merchandise in his hands putting it in his coat pocket and he was watching behind him and every time a customer would come by, he would warn his friend that somebody was coming by and he would pretend like he was shopping. They was in one aisle 15 or 20 minutes just looking at different merchandise. And I observed this all over the store". The witness did not observe defendant taking anything or secreting any merchandise about his person. "All he did was walk around with his friend".

On his own behalf defendant testified that he wandered around the store with Ward "like most people will do", intending to buy a pack of cigarettes on the way out. He denied seeing Ward take or secrete any goods and testified he had no idea Ward had such intention, but admitted that when they were arrested Ward had some articles on his person that belonged to Milgram's.

The text of ordinance Section 39.750 is as follows: "STEALING OR CARRYING AWAY PROPERTY OF ANOTHER. Any person who shall steal, take or carry away any money or personal property or effects of another shall be deemed guilty of a misdemeanor".

In defendant's first appeal assignment he undertakes to establish the proposition that Section 39.750 applies only to a person who, as the principal and moving actor, commits an act of theft defined therein, and that *an accessory* to the theft is not within the purview of the ordinance and can not be convicted under its terms. This theory is based on the suggested premise that the city has no ordinance making it an offense "to assist, abet or aid another in the violation of a city ordinance". Therefore, argues defendant, since the entire evidence conclusively shows that the theft of Milgram's merchandise was accomplished by the physical acts of his "friend", and that defendant "did not secret(e), pick up or carry away—any property belonging to Mil-

gram Store", the trial court was mistaken in its belief that defendant could be convicted under the ordinance as an accessory to the theft, and was without authority to render the judgment of conviction.

■ There is no merit in the foregoing. Since the distinction between principal and accessory is maintained only as to felonies, all who participate in misdemeanors, if guilty and punishable at all, are principals and chargeable as such. 22 C.J.S. Criminal Law § 81b, p. 241; 14 Am.Jur., Criminal Law, Sec. 105.838. This rule is consistently followed by Missouri courts and is restated in State v. Muchnick, Mo.App., 334 S.W.2d 386, as follows: "All who participate in the commission of a misdemeanor are principals. There are no accessories in misdemeanors, either before or after the fact, and all persons concerned therein are to be treated as principals (citing authorities)". And, "By analogy to the rule in misdemeanor cases, all who participate either directly or accessarily in the violation of a municipal ordinance may be held as principals, * * *". 22 C.J.S. Criminal Law § 81b, p. 242. Also see 62 C.J.S. Municipal Corporations § 326, p. 675, which contains the following statement: "The persons liable for the violation of a municipal ordinance are those persons who fairly come within its provisions. As a general rule, all persons participating in the breach of a municipal ordinance are guilty as principals". We necessarily rule that defendant is subject to conviction under Section 39.750 as a principal if it has been established by the evidence that he participated in the offense by aiding or abetting in its commission or acting as an accessory thereto.

Defendant's remaining point is: "That the City wholly failed to prove a violation of the city ordinance in that they failed to prove that the defendant did steal, take and carry away any property belonging to the Milgram Store". The point and supporting argument are essentially repetitive of the assignment we have discussed, and do not define the issue which remains for our determination—namely, whether defendant participated in any manner in the commission of the misdemeanor to the extent that he is subject to conviction as a principal.

■ "Aiding or abetting, in the sense that those words are used in criminal law, contemplate conduct calculated to incite, encourage or assist in the perpetration of a crime. These words comprehend all assistance rendered by acts or words of encouragement, incitement or support in the criminal act and involve some participation, either before or at the time the criminal act is committed. It implies some conduct of an affirmative nature". State v. Muchnick, 334 S.W.2d 386, citing 22 C.J.S. Criminal Law § 88(2)a, p. 261.

■ Presence of the accused at the commission of a crime is evidence to be considered in determining whether he was guilty of aiding and abetting, but in order to convict an accused for aiding and abetting another in the commission of a crime something more than mere presence must be shown. State v. Castaldi, Mo.Sup., 386 S.W.2d 392. In this connection, evidence fairly showing any form of affirmative participation in a crime is sufficient to support a conviction. State v. Ramsey, Mo.Sup., 368 S.W.2d 413. And, as Judge Eager pointed out in the last cited case, the term "aid and abet" is well defined in Mays v. United States, (C.A.8), 261 F.2d 662, at loc. cit. 664, where the court said: "* * * In order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.' L. Hand, J., in United States v. Peoni, 2 Cir., 100 F.2d 401, 402. And [Nye & Nissen v. United States], at page 620 of 336 U.S., at page 770 of 69 S.Ct. [93 L.Ed. 919], the Supreme Court states: '* * * Aiding and abetting has a broader application. It makes a defendant a principal

when he consciously shares in any criminal act whether or not there is a conspiracy. * * *'"

To demonstrate that the foregoing principles are applicable to the instant case which we must regard as a civil action, City of Webster Groves v. Quick, Mo., 319 S.W.2d 543, although it is founded upon an act complained of which in itself constitutes a misdemeanor defined by criminal statute, and is triable in the circuit court under the rules of criminal procedure, Kansas City v. Martin, Mo.App., 369 S.W. 2d 602, we direct attention to the following holding of the Supreme Court in a case involving civil trespass, to wit, Mc-Mannus v. Lee, 43 Mo. 206 (frequently cited by the Supreme Court and reaffirmed in State v. Ramsey, supra): "The law is well laid down that any person who is present at the commission of a trespass, encouraging or exciting the same by words, gestures, looks, or signs, or who in any way or by any means countenances or approves the same, is in law deemed to be an aider and abettor and liable as a principal; and proof that a person is present at the commission of a trespass, without disapproving or opposing it, is evidence from which, in connection with other circumstances, it is competent for the jury to infer that he assented thereto, lent to it his countenance and approval, and was thereby aiding and abetting the same".

It is axiomatic that in determining whether the evidence is sufficient to support a judgment every case must naturally stand upon its own facts. State v. Ramsey, supra. Our review of the record before us, conducted with due regard for all rules recognized as applicable in testing the sufficiency of evidence to support a criminal conviction, discloses facts and circumstances which warrant the fair and reasonable inference that defendant was engaged in concerted action with Ward as an aider and abettor in the perpetration of the offense charged against him. From the testimony of plaintiff's witnesses Peterson and Lombardo, when considered together with all other circumstances shown, the trial court could properly find beyond a reasonable doubt that defendant was consciously acting as a "shield" to hide Ward's pilferage from view and as a "lookout" to warn him of approaching persons. This finding is sufficient to support the judgment which convicts defendant as a principal in the offense charged.

Finding no error in the record before us, we affirm the judgment.

All concur.